The next case is number 241136 McInnis v. Interior. Okay, Ms. Leis. Good morning, your honors. May it please the court, I represent the petitioner in this case, Stephen McInnis, and his appeal from the MSPB. We respectfully request that the court reverse the board's decision for three key reasons. The first is that Mr. McInnis made protected disclosures by way of his administrative grievance, and his supervisor, Ms. Potts, clearly knew of his protected disclosures. The second is his protected disclosures were a contributing factor to the personnel actions taken against him. And third, the Carr factor suggests that the respondent cannot meet their burden by clearly convincing evidence that they would have taken the same personnel actions, but for his protection. That issue is not before us. It wasn't decided by the board whether they would have taken the same action. That is correct, but I hope to convince you that if we established that my client did engage in protected disclosures, and his supervisor was aware, he then would have met his case in chief, and therefore we would request a remand for the board to fully consider whether the respondent has met his burden. But I think I understand your point, and I will explain to you why my client did make protected disclosures by way of his grievance, and his supervisor was aware of those disclosures. Mr. McInnis expressed in his grievance that he believed that adverse actions taken against him were, quote, retaliation. We admit in our briefs that he did not say retaliation for whistleblowing, but we believe that the case law does not require that. What matters is the substance of his disclosures, and as you'll see in his grievance, he made several disclosures that... Cases suggest that a disclosure in the grievance, except under unusual circumstances not presented here, doesn't count as a disclosure for whistleblowing purposes. Well, his disclosures were seeking to remedy the violations in 2302b-8, so that's why we believe that he would have jurisdiction, that his disclosures were evidencing a violation of a legal rule, a violation of FMLA, abuse of authority, and we believe those disclosures... Also can just be the basis for a regular grievance that he said, you violated my FLMA rights, and not that you're retaliating against me because I'm disclosing your violation of FMLA rights. And isn't... I mean, the board read it the first way, which is, sure, he grieved the fact that he... Is this the one where he was suspended or the letter of reprimand? The letter of reprimand, yes. He got a letter of reprimand, and he said, this is because I'm grieving this because you violated my FLMA rights and whatever else the agreement says, but it doesn't say that he grieved it because you retaliated against me for exercising those rights. And that makes a distinction about whether it falls under Part 1 or Part 2. And if it falls under... I'm going to get them wrong. Is Part 2 the one that's not part of the IRA? Yes, it's part of Part 2. If it falls under Part 2, which is just a general grievance, then it isn't included here, and the board read it that way. That is correct, and that is in the board's footnote. However, he did use the word retaliation, and that, I think, is true. Sure, but there are retaliation provisions in lots of these laws, and they don't necessarily imply whistleblower retaliation. I mean, Title VII has retaliation provisions, and if you retaliate against somebody for exercising their EEO rights, that's a violation of Title VII, but it's not necessarily a 2302b8 violation, right? That is correct. And so, just because he uses the word retaliation doesn't suggest that he was claiming that he was retaliated against for the disclosure, but rather that he was retaliated against for exercising those rights. And that's a B2, sorry, whatever, it's a 2, not a 1. Let's just simplify it because I'm going to get that long chain of things. That's a 2, right? If it's just, you're retaliating against me for exercising my rights, not retaliating against me for disclosing your violation of those rights. I think if you look at the grievance in whole, and it's a five-page, single-spaced document that my client wrote prior to having an attorney, but you'll see the language. Yes, he uses the word retaliation, but he goes beyond just saying, I was retaliated. Do you want to point me to your best evidence in the appendix? Sure. So, appendix 106 is where he references the word retaliation, that he says, they were attempting to deny my FMLA to which I was legally entitled to, which would appear to be a result of something personal or retaliation. Appendix 104, again, he references the FMLA leave. Appendix 105, he disclosed violations of the federal travel regulations. Appendix 104, he discloses abuse of authority. So, when I read all these, they all appear to be protected disclosures. He filed this complaint with the EEO, he filed this complaint with the OIG, and the issues have since narrowed from the board. But the grievance, in our view, does constitute protected activity. If we disagree, then that's it, right? So, if you disagree, he did engage in other protected activity, which the board did acknowledge, and that was the administrative investigation that occurred several months later. The problem there is that the deciding official took whatever action you're complaining of with regard to this disclosure, claimed she didn't know about this, and so she had no knowledge, and therefore you couldn't invoke the knowledge timing test or show that there was retaliation. So, if you review the hearing testimony, and I understand there wasn't a transcript, but there is hearing audio that is part of the record at Appendix 228. She says that she was not informed of the identity of anyone participating in the investigation. She says that she was not given a copy of the report. She never says in the testimony that she did not know that Mr. McInnis was participating. And again, this is an... I mean, the board made a factual finding against your client on this point and based on this testimony, and you want to pick apart the testimony and say, well, it could support a different view, but can we really do that under a substantial evidence review? So, looking beyond her testimony, it is abundantly clear that she knew he engaged in protected activity. She called him a troublemaker. She testified... Not just that he engaged in protective activity, but he engaged in the protected activity of participating in this investigation. That's the problem with your references to these more general notions that he was a troublemaker and the like. You don't win if you just show that she knew he was a troublemaker. You have to show for this particular disclosure that she knew of it, and the disclosure is him telling things during the course of this investigation. Do you have any... I mean, and the board said, she said, I didn't know that he participated. And we may even disagree with that, but if there's evidence and they cited the evidence, which you pointed to, where she said, I didn't know of it and I wasn't given a copy, isn't that substantial evidence? So, this was an office-wide investigation. She knew that this was an employee who was constantly making complaints. She knew of his inferences on the facts, and you may have the better argument on inferences, but what are we to do with the board's fact-finding? Are you saying that all this other stuff is enough to make it that no reasonable fact-finder could have believed the board's fact-finding? Because that's the standard, right? That is the standard, and I think the judge weighed her credibility. The judge... This is an appeal from a hearing that an administrative judge witnessed her testimony and witnessed my client's testimony, and the judge made a determination that she was aware and that there was a motive. You said they weighed her credibility. Did the administrative judge make a specific credibility determination that the judge didn't believe her on that point? She did not make a specific credibility determination on that witness, though she did make credibility determinations. I mean, if the AJ had made a credibility determination, then you'd be in good shape because the board can't overturn that, but I didn't see any kind of the traditional factors under Hill and where the AJ references that, right? You are correct. No, there was no specific... And so you can overturn it unless it's based on demeanor, right? That is correct. So, for... They applied the proper... The board, the full board applied the proper factors under Hay, too. Correct. But you're not arguing a legal error there? No. So, for argument's sake, assuming that she does not have knowledge that we need to overturn at this stage, we can look at other factors like whether or not she had a motive to retaliate and whether or not the agency's reasons for the actions were worthy of belief. Again, Ms. Potts was actually implicated in this investigation. She was ordered to... It was recommended that she attend additional supervisory training. This is at Appendix 990. The investigation also found that management had played a vital role in allowing this behavior to manifest. So, I would argue that under Phillips v. Department of Transportation, that criticism of her as a supervisor, as someone who is managing that office, we can impute a retaliatory motive upon her. If we already know that she was hostile towards his protected activity, I think that's abundantly clear. His disclosures implicated her. And so, therefore, even if we can't establish knowledge timing, which I do believe that we could based on my earlier arguments, I think that we can still prove his haste and sheaf that the timing... I mean, he was put on a PIP within three months of the end of the investigation. He was actually suspended four days after the completion of the investigation. His performance was always consistent. He was rated the same in prior years. All of a sudden, he engages in protected activity. This new supervisor comes along and we the personnel actions before us. So, I would respectfully request that if you believe that we've met our case-in-chief, that you remand the case back to the board for a full analysis of whether or not they've met their burden under the law. Thank you. Ms. Tamani? Good morning, Your Honors. May it please the court. The court should affirm the final decision of the board because substantial evidence supports the board's conclusion that Mr. McKenna failed to prove that he engaged in whistleblower activity that was a contributing factor in the agency's decision to place him on a performance improvement plan and then subsequently remove him when he failed to improve. Mr. McKenna's filed his IRA appeal last week, and he has not yet been released. I think the government agrees that there's one obligation of protected activity engaged or cooperating in the agency investigation, right? Yes. I mean, the board found that he didn't challenge that, and the agency prevailed below because they proved to the board's satisfaction that the deciding official didn't know about his involvement in that investigation. And how big is this office? I mean, given that this was an office-wide investigation, the agency, the deciding official knew who he was, that he was involved in all these kind of complaints. Is it even plausible to think that she didn't at least have a reasonable suspicion or basically know that he was engaging in the investigation, cooperating with the almost incredible to me? Well, Your Honor, first, I think, as you yourself noted in the questions to my friend here, there's substantial evidence. Oh, I get it. Believe me, I get it. But how far does that go if we find it's just simply implausible that she didn't know about that? Does that translate into a lack of substantial evidence? No, Your Honor. I think for the court to find that that was implausible, the court would have to make several inferences and ignore the direct, unimpeachable, and sworn testimony by Ms. Potts herself. And in fact, all of the witnesses that testified regarding this investigation stated that they were not informed of who- Her testimony seemed pretty carefully calibrated to say, I wasn't informed, I wasn't given a copy, blah, blah, blah. Did it ever say explicitly I had no knowledge of his involvement? She also, Your Honor, said she did not base her proposed removal on any alleged whistleblower disclosure. Well, that's a different question of whether she had knowledge. She, as well as several witnesses, testified that, correct, she wasn't informed. She never received a copy of the report. I mean, if I was a deciding official and I wanted to try to, and I'm not suggesting that she tried to avoid the law, but I wanted to be careful about it and try to defend myself against whistleblower retaliation, I might say, even if I pretty much knew, I would say, well, I was never specifically informed. I was never given a of this. I did not actually know for a fact and stuff like that, which falls far short of her really knowing about it. I think, Your Honor, again, we'd have to make a lot of inferences based on the record when we do have her unimpeachable testimony. In addition to that, though, several witnesses, Ms. Thompson- At the hearing, was she asked the kind of questions Judge Hughes is talking about? Was she asked, were you aware of it? And are those sort of careful answers in response to that kind of question, or are those different questions? I'll be honest, Your Honor. I do not recall the exact question to which she responded when she stated that, but I think it was pretty clear based on her testimony that she did not know. And Ms. Tomlin also testified that it was based on how the office was arranged. It was impossible to see who was being interviewed by the investigator. Additionally, because Mr. McInnes has suggested that somehow this investigation was prompted by his disclosures, it was not. It was Ms. Mock, which was the manager of the office, that testified that she requested the investigation in the office, particularly because of Mr. McInnes's behavior in the office. He repeatedly refused to acknowledge Ms. Potts as his supervisor, refused to obey her instructions and commands. Several other people had gone to her and complained about his outbursts in the office, and I think all of that is reflected in the investigator's report as well. So it wasn't anything that Mr. McInnes himself disclosed that prompted this investigation. It was the management feeling at their wit's end and requesting some guidance from higher-ups to figure out how to deal with this environment. That was, as the investigator found, principally because of Mr. McInnes's own behavior. Well, the fact that management requested the investigation perhaps is further evidence that she knew about it. She knew about... The society official knew about it. She certainly knew about the investigation, right? She knew about the investigation because she herself was interviewed. But it is possible that... If we look at the questions of the investigator as well and the instructions for the questions, it's very clear the instructions were please do not disclose this to anyone. I think the investigator was very careful to make sure that the investigation was confidential, including the results of the investigation. If the... I can also address the grievance issue if the court has any questions about that, or I think the law is very clear that the board's jurisdiction is limited to prohibited personnel actions that are due to a disclosure covered by either 2302B8, which generally covers retaliation for whistleblowing, or 2302B9AI, which covers retaliation for exercising. The difference in this case comes down to if the grievance had explicitly said, you're retaliating against me for disclosing your violations of the FOMLA, that would be a B8, but you're retaliating against me for exercising my FOMLA rights, that's a two. I think so. Correct, Your Honor. And I want to talk about the timeline just for a second, because he's making this argument that... First of all, my friend just admitted that he knows never even mentioned retaliation for whistleblowing. He speculates, oh, this seems pretty unprofessional, this seems like it's retaliation. According to the timeline, his first alleged protected activity is somewhere in 2012, he claimed that he filed EEO complaints, and as the board found, that's not sufficient for IRA purposes. So the second alleged protected activity is this filing of a grievance. So in essence, he's saying this is the first time that I'm engaging in protected activity, but at the same time, he can't be claiming that he was retaliated for whistleblowing activity if the whistleblowing activity hadn't yet occurred, is my point. Unless the court... And finally, Your Honors, the invitation that the court engage in the analysis of whether the board, or excuse me, whether the agency met its burden, the court... Felt factual. I mean, if we agreed that it needed to go, that she'd proven the initial stages, we would just have to send it back, right? Yes, Your Honor. Unless the court has any other questions with respect to the request that the affirmative decision of the court. Thank you. Ms. Lewis. I just have two points. I wanted to point the court's attention to Williams v. NLRB 59 MSRP 640, where it specifically says the word whistleblower does not need to be a part of a disclosure for it to be protected. And second, I want to point the court to the statement that Ms. Potts made during the investigation. As I referenced in my brief, she referenced Mr. McInnis over 30 times by name, despite the fact that no questions ever specifically asked about Mr. McInnis. That excludes her use of him, he, and his. I understand all your pointing to these facts. The problem is still the substantial evidence standard. And she also has testimony saying she didn't know of his involvement. And unless we find that that was inherently incredible, then it supports the board's factual finding, doesn't it? It does, but I would implore you to listen to her testimony. It is, she specifically says, I was not informed. That, to me, if you, there's maybe a five minute piece of her testimony, as well as on cross-examination that I think... What was the question that she was asked? She was asked... No, no, don't interrupt. What question was she asked when she gave that response? She was asked, let me see if I actually have the exact language to give you. She was asked who participated in the investigation, and she said, I was not informed. So she had an invitation to provide, I guess, a list of people if she knew. It, it just, to me, it does not make sense that she did not know of this. I mean... She knew that everyone participated. Was there follow-up? I think the... Do you have any knowledge that, I forget your, Mr. McKinney participated? That was not the follow-up question. The follow-up question, I think, was were you given a copy of the report? So, I, I think there's enough... To invoke the knowledge timing test, there would be, it wouldn't be sufficient. Would it, that she knew that he participated in the investigation, she'd have to know that he made allegations. There's still more allegations in the course of the investigation, right? And I believe that she did know if you read her... That's the answer to my question. You're, you're, yes, you are correct, your honor. Thank you. Okay, thank you. Thank both counsel. The case is submitted.